IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MIDAJAH SPENCER, a minor,**<br>**by APRIL SPENCER, her mother,**<br>        Plaintiff<br><br>        v.<br><br>**JO ANNE B. BARNHART,**<br>**Commissioner of Social Security,**<br>        Defendant | Civil Action No. 04-179 Erie<br>District Judge McLaughlin<br>Magistrate Judge Baxter |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I      RECOMMENDATION**

It is respectfully recommended that the Plaintiff's Motion for Summary Judgment [Document No. 8] be denied and the Defendant's Motion for Summary Judgment [Document No. 10] be granted.

**II      REPORT**

**A      Procedural Background**

Plaintiff April Spencer brought this action on behalf of her minor daughter, Midajah Spencer, pursuant to Section 205(g) of the Social Security Act, seeking judicial review of a final decision by the Social Security Commissioner denying her Application for Social Security Income (SSI).

Spencer filed a protective claim for childhood Supplemental Security Income disability benefits on Midajah's behalf on November 22, 2002. The Social Security Administration initially denied Spencer's claim on March 10, 2003.

Pursuant to Spencer's request, the SSA conducted a hearing before Administrative Law Judge James J. Pileggi on September 10, 2003. At the hearing, ALJ Pileggi agreed to keep the record open for another two weeks. R. 293. On December 15, 2003, Spencer obtained a

1

comprehensive evaluation of her alleged disabilities from the Riverview Intermediate Unit. However, Spencer did not forward the Riverview report to the ALJ until March 2, 2004. ALJ Pileggi, without reference to Spencer's March 2 submission, issued a decision on March 3, 2004. Pileggi found that although Spencer's developmental problems were "severe" under 20 C.F.R. 416.924(c), her impairments did not meet, equal or functionally equal a listed impairment. R. 17. Pileggi concluded Spencer was not "disabled" and was therefore not entitled to S.S.I. Id.

Thereafter, Spencer asked the SSA Appeals Council to review ALJ Pileggi's findings in light of her March 2 submission and forwarded the updated Riverview report to the Appeals Council. (R. 3). The Appeals Council considered all of Spencer's submissions but nevertheless found no basis for changing the ALJ's decision. (R. 3(a)).

On June 23, 2004, Spencer filed this action seeking judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). She requests that the Court order the Commissioner to convene a new administrative hearing to consider the Riverview report her counsel submitted to ALJ Pileggi on March 2, 2004. The Commissioner and Spencer have filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The matter is therefore ripe for review and disposition.

**B**    **Factual Background and Records Submitted to the ALJ**

Midajah Spencer was born on January 10, 2001 to Timothy and April Spencer of Franklin, Pennsylvania. She was born three to four weeks prematurely, but her weight and other physical attributes were normal.[1] (R. 88).

On May 11, 2001, Mrs. Spencer had become concerned with her daughter's

---

[1] From 2001 through 2003, Midajah was seen by family practitioner Dr. William Hebda and Franklin Pediatrics during birth, for checkups and for treatment of a rash, sinusitis, diarrhea and other flu-like symptoms. (R. 65- 77, 88-98, 194-201). Although before the ALJ and the Appeals Council, these records generally do not address Spencer's alleged impairments.

development. She brought Midajah to the Riverview Intermediate Unit for an evaluation. M. Michelle Mitchell, an Early Intervention Teacher with Riverview, found that Midajah, who was five months old at the time, exhibited a "25% or greater delay in the fine motor and social/emotional area of development." (R. 85). Mitchell recommended Midajah be treated by an occupational therapist and that she be provided other early intervention services. (R. 86). After this evaluation, Midajah began receiving physical and speech therapy through the Venango County Easter Seals Early Intervention Program. (R. 188, 193).

Over the course of the next two years, the Venango Easter Seals program provided almost weekly assessments of Midajah's development and provided her with both speech and physical therapy from June, 2001 through January, 2003. (R. 130-187). On January 14, 2003, Easter Seals staff met with Midajah and found her motor skills conformed with her age group and found she did not need additional physical therapy. (R. 128, 130). While her comprehension skills fell within the normal range, staff recommended further speech therapy to expand her vocabulary. (R. 129). Through September of 2003, Easter Seals continued to assess her verbal skills and recommended that Midajah's parents read more books to her and encourage her to verbally identify pictures. (R. 112-127; 205-227).

On January 20, 2003, Dr. Thomas Chesar, M.D. evaluated Midajah on behalf of the Pennsylvania Bureau of Disability Determination. (R. 99-105). Chesar noted her motor skills had improved and concluded Midajah's only significant developmental delay related to her speech. (R. 101). He opined she would likely improve with further therapy. (R. 101-102). Sanford Golin, Ph.D., and Frank Bryan, M.D., reviewed the Easter Seals Society's findings and Dr. Chesar's evaluation on behalf of the Social Security Administration. Golin and Bryan found that although Midajah's expressive speech impairment was severe, it did not meet, equal or functionally equal impairments listed in the Social Security Administration regulations. (R. 106).

**C****     Disability Hearing**

At the September 10, 2003 disability hearing, Mrs. Spencer[2] and Attorney James Bukac appeared on Midajah's behalf. Mrs. Spencer testified that Midajah, two years old at the time, continued to develop slowly, suffered from frequent ear infections and had begun to develop behavioral problems. Spencer testified that although speech therapy had resulted in improvements, Midajah's speech was often unintelligible. (R. 296). Spencer also claimed that while Midajah's motor skills were improving, she continued to fall "at least six to ten times a day." (R. 297). She further testified Midajah suffered from frequent ear infections but that an antibiotic normally resolved the infections.[3] (R. 302). Finally, Spencer claimed that Midajah behaved more aggressively than other two year olds. She claimed Midajah played "Tarzan off the mini-blinds," threw things, hit herself and her parents, smacked her sister with a paddle, wrapped drawstrings and bucket handles around her neck and often ran out into the road. (R. 300-304). She testified that Midajah's behavior was not addressed in therapy because Easter Seals staff and Dr. Cartwright downplayed Midajah's behavior as ordinary for two year-olds. (R. 300, 303).

---

[2] Mrs. Spencer claimed Midajah was unable to attend because she was suffering from a second bout with chicken pox. (R. 294).

[3] In June, 2001, Spencer brought Midajah to Ear, Nose & Throat Specialist Dr. Pamela Crawford to determine whether Midajah suffered from any hearing loss. Crawford found Midajah appeared to have "questionable hearing" and referred her to Ear, Nose & Throat Specialist Dr. Kirk Eidenmuller for further evaluation. (R. 81). Eidenmuller concluded Midajah's hearing was essentially normal. (R. 79). On January 20, 2003, Mrs. Spencer told Dr. Chesar that Midajah's ear infections were probably the result of her foster parents' smoking habits, since Midajah did not develop ear infections after she was moved out of foster care. (R. 99). According to her mother, Midajah resided with her foster parents from the age of five months to the age of fifteen months. (R. 298).

**D**	**Riverview Intermediate Unit Report**

On September 24, 2003, the Riverview Intermediate Unit began conducting a comprehensive evaluation of Midajah's development. Riverview staff observed Midajah on two occasions and administered two development tests to evaluate her personal, adaptive, motor, cognitive and language skills. (R. 233, 235). Riverview psychologist Patti McIntyre prepared a report of Riverview's findings and delivered the report to Mrs. Spencer on December 15, 2003. (R. 238-39). The report indicated Midajah's development was "significantly delayed" in seven areas. (R. 233-35). At an age of 34 months, Midajah's skills were equivalent to those of children aged: 1) 21 months in the personal social area; 2) 17 months in the adaptive area; 3) 19 months in fine motor; 4) 23 months in gross motor; 5) 17 months in cognitive; 6) 19 months in receptive language and 7) 24 months in expressive language. (Id.). McIntyre's report concluded Midajah was developmentally disabled and recommended Midajah be given specially designed instruction to address her many needs. (R. 237). Spencer submitted the Riverview report to the ALJ on March 2, and thereafter submitted three largely duplicative[4] versions of the report to the Appeals Council. (R. 240-289).

**E**	**The Administrative Law Judge's Decision**

A child under the age of 18, like Spencer, is considered disabled under the Social Security Act if she has medically-determinable physical or mental impairments that result in marked or severe functional limitations that have lasted, or can be expected to last, for a continuous period of at least 12 months, or that can be expected to result in death. Notwithstanding the foregoing, however, a child cannot be considered disabled if she is engaged in substantial gainful activity. 42 U.S.C. § 1382(c)(a)(3)(C).

In determining whether a child is disabled, a three-step evaluation process is followed,

---

[4] The additions provided in Spencer's March 25 and April 12 submissions to the Appeals Council contain duplicates of the Riverview report and a series of worksheets outlining objectives and recommendations for Spencer's development. (R. 253-54, 257-78).

5

under which the ALJ must consider: 1) whether the child is working or engaging in substantial gainful activity; 2) whether the child has a physical or mental impairment or combination of impairments, that is severe; and 3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment listed in the "Listing of Impairments" in Appendix 1 of Subpart P of 20 C.F.R. Part 404.  20 C.F.R. § 416.924 (2004).

A child meets a listing if the specific findings detailed within the description of a listing exist with respect to that child's diagnosis.  20 C.F.R. § 416.925(d).  A child medically equals a listing if the medical findings with respect to the child's impairment are at least equal in severity and duration to the listed findings.  20 C.F.R. § 416.926(a).  A child functionally equals a listing when she has a severe impairment that results in "marked" limitations in two domains of functioning, or in an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(a).

There are six domains of functioning used in determining functional equivalence: 1) acquiring and using information; 2) attending to and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) ability to care for oneself; and 6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  A "marked" limitation in a domain is found when an impairment interferes seriously with the child's ability to independently initiate, sustain or complete activities.  20 C.F.R. § 416.926a(e)(2).  An "extreme" limitation in a domain is found when an impairment interferes "very seriously" with the child's ability to independently initiate, sustain or complete activities.  20 C.F.R. § 416.926a(e)(3).

In this case, the ALJ evaluated Spencer's claims under the appropriate guidelines and determined Spencer was not eligible for disability benefits.  At the first step, he found Spencer had never engaged in gainful employment.  (R. 13).  Second, he found Spencer's developmental delays were more than slight abnormalities and were therefore "severe" impairments within the meaning of 20 C.F.R. § 416.924(c).  (Id.).  However, at step 3, the ALJ found Spencer's impairments did not meet, medically equal or functionally equal a listed impairment.  (R.  16-

6

17).  Specifically, the ALJ found Spencer suffered from 1) "less than marked" cognitive limitations; 2) no limitation in attending and completing tasks; 3) "less than marked" limitations in social interaction with others; 4) no ongoing deficits in moving about and manipulating objects; 5) no limitation in caring for herself; and 6) no limitation with respect to her overall health and physical well-being.  Ultimately, ALJ Pileggi found Spencer was not disabled for purposes of eligibility for Supplemental Security Income.  (R. 16).

### III      STANDARD OF REVIEW

### A       Jurisdiction

The Social Security Act gives federal district courts the power to review final determinations by the Commissioner.  42 U.S.C. § 405(g).  A decision by the Commissioner becomes final when: a) the Appeals Council affirms an ALJ's decision; b) the Appeals Council denies review of an ALJ's decision; or c) the claimant fails to pursue remaining administrative remedies.  This Court obtained jurisdiction once the Appeals Council denied Spencer's petition for review.

### B       Standards Applicable to the ALJ's Decision

District Court review of the Commissioner's final decision is limited in scope.  *Hartranft v. Apfel*, 181 F.3d 358 (3d Cir. 1999).  The Court must affirm the Commissioner's final decision unless it is not supported by substantial evidence.  Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988).  *See* 42 U.S.C. § 405(g).  However, the Court's review of whether the Commissioner applied the proper law is plenary.  *Matthews v. Apfel*, 239 F.3d 589, 591 (3d Cir. 2001), *citing Tubari, Ltd., Inc. v. NLRB*, 959 F.2d 451, 453 (3d Cir. 1992).  As such, even if an ALJ's

decision is supported by substantial evidence, this Court can overturn that decision if it finds that it was based upon an incorrect interpretation of the law. *Freidburg v. Schweiker*, 721 F.2d 4445, 447 (3d Cir. 1983).

## IV      DISCUSSION

Unlike most Social Security claimants, Spencer has not asked this Court to review the ALJ's decision under the substantial evidence standard. Instead, she requests only that the Court remand her case to the Commissioner to consider the Riverview report at a new administrative hearing, pursuant to Sentence Six of 42 U.S.C. § 405(g)[5] and the Third Circuit's holding in *Matthews v. Apfel*, 239 F.3d 589 (3d Cir. 2001). The *Matthews* Court held that when the Appeals Council has denied review of an ALJ's decision, "the district court may affirm, modify or reverse the Commissioner's decision, with or without a remand, based upon the record that was before the ALJ." *Matthews*, 239 F.3d at 593. However, "when [a] claimant seeks to rely on evidence that was not before the ALJ," the district court may remand to the Commissioner only if the plaintiff shows the evidence is 1) new **and** 2) material **and** 3) if there was good cause why it was not previously presented to the ALJ. *Id*.

Before reaching the *Matthews* analysis, the issue of whether the Riverview report was

---

[5] Sentence Six provides: "The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based." 42 U.S.C. § 405(g).

8

"before the ALJ" must be resolved.  Spencer argues the report was before the ALJ because her attorney, Mr. Bukac, mailed and faxed the report to ALJ Pileggi on March 2.  However, the record indicates Pileggi did not have the report before him prior to issuing his decision: 1) Pileggi did not address the report in his opinion; and 2) the report is not included in the list of exhibits before the ALJ, yet it is included in the list of exhibits considered by the Appeals Council.  (R. 1-4).  In conclusion, the record indicates Pileggi did not have the Riverview report before him prior to issuing his decision on March 3 and the Riverview report was therefore considered as new evidence before the Appeals Council.

**A    Materiality**

This Court now turns to *Matthews* and concludes the Riverview report is "material." Additional evidence is "material" if there is a reasonable possibility that it would have changed the outcome of the Secretary's determination.  *Szubak v. Sec'y of HHS*, 724 F.2d 831, 833 (3d Cir. 1984).  The Riverview report surveyed Midajah's development over the time period relevant to her application for disability benefits.  *Newhouse v. Heckler*, 753 F.2d 283, 287 (3d Cir. 1985).  More importantly, Riverview's findings contrasted sharply with the rest of the record.  The Riverview report indicated Midajah's physical and cognitive development was significantly delayed in social, cognitive and physical areas; the rest of the record suggests Midajah's sole remaining problem related to her vocabulary.

**B    New Evidence**

While the report is December 15 report may be considered "material," it is not "new" evidence.  Additional evidence is considered "new" if it was not available to the claimant at the time of the administrative proceeding.  *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). Although the record was apparently closed two weeks after the September 10 hearing (R. 293), the overall proceeding remained open until ALJ Pileggi issued his decision nearly six months

9

later.  Spencer acknowledged receipt of the Riverview report on December 15, well before Pileggi closed her case.  Likewise, the March 25 and April 12 reports Spencer submitted to the Appeals Council are not "new."  Evidence is not "new" if it is merely cumulative relative to the existing record.  *Newhouse v. Heckler*, 753 F.2d 283, 287 (3d Cir. 1985).  The latter reports presented more nuanced recommendations for future therapy, but they did not contain any new findings regarding Midajah's condition. Therefore, neither the December 15 report nor the updated reports are "new" evidence for purposes of *Matthews*.

**C       Good Cause**

Spencer claims she meets the *Matthews* good cause requirement because she faxed the Riverview report to ALJ Pileggi before he issued his decision.  This Court disagrees.  Mrs. Spencer acknowledged receipt of the report in writing on December 15, 2003.  When Bukac finally forwarded the report to Pileggi, he claimed he had "just become aware" of the report.  (R. 228).  Bukac has offered no explanation as to why he was unaware of a highly relevant, comprehensive evaluation with a potentially decisive impact on his client's disability claim.  Likewise, Spencer has not attempted to explain why she did not share this report with Bukac while her claims were pending before the ALJ.  Even if we were to find the December 15 Riverview report new and material, Spencer has failed to show good cause for why she did not include the Riverview report in the administrative record prior to Pileggi's decision.  *Matthews*, 239 F.3d at 593, *citing Szubak*, 745 F.2d 831, 833 (3d Cir. 1984).

For the foregoing reasons, this Court concludes Spencer's case should not be remanded to the Commissioner pursuant to Sentence Six of 42 U.S.C. 405(g).

**V       CONCLUSION**

It is respectfully recommended that the Plaintiff's Motion for Summary Judgment

[Document No. 8] be denied and the Defendant's motion for Summary Judgment [Document No. 10] be granted.

In accordance with the Magistrates Act, the parties are allowed ten days from the date of service to file written objections to this report.  See 28 U.S.C. 636(b)(1)(B) and (C) and Local Rule 72.1.4 B.  Any party opposing the objections shall have seven days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of appellate rights.

S/ Susan Paradise Baxter  
SUSAN PARADISE BAXTER  
CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: August 3, 2005